UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


TREVOR B. SMALLS,

      Petitioner,

v.                                                          Case No. 3:19cv474-MCR-HTC

SECRETARY of the FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Trevor B. Smalls, proceeding *pro se*, filed an amended petition under 28 U.S.C. § 2254 challenging his conviction and sentence in the circuit court of Walton County, Florida, in *State v. Smalls,* 2014 CF 689, for being a principal to armed robbery and a principal to aggravated assault.  ECF Doc. 8 at 2.  Petitioner raises three (3) grounds of ineffective assistance of trial counsel.  The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After considering the amended petition and supporting memorandum, the State's response (ECF Doc. 20), and allowing Petitioner the opportunity to file a reply, the undersigned recommends the Petition be DENIED without an evidentiary hearing.

# I.    BACKGROUND

## A.    Offense and Conviction

Petitioner was the getaway driver in a robbery of a McDonald's restaurant in Walton County on November 11, 2014.    ECF Doc. 20-4 at 47.[1]    Two other individuals went into the McDonald's, one of whom threatened employees with a gun to force them to open the safe.  *Id.*  Petitioner stayed in the vehicle and drove off after the two males exited the store and got in the car.  *Id.*

Employees from the restaurant gave dispatch a description of the vehicle and where it was heading.  *Id.*  The Petitioner drove down a dead-end road and turned around, allowing police to quickly spot the vehicle and conduct a felony stop.  Inside the vehicle were Petitioner (driving) and Kelly Eugene Stewart (in the back seat).  *Id.*  The third perpetrator was not in the vehicle.  *Id.*

As becomes important in Petitioner's arguments below, the arrest report states, "The driver was initially identified himself [sic] as Wesley Darryl Martwaine by Louisiana driver's license, however he was later correctly identified as Trevor Bernard Smalls."  ECF Doc. 20-4 at 47.  The report also states that "Mr. Smalls invoked his constitutional rights and was not asked any questions."  *Id.* at 48.  Stewart, the other occupant of the car did talk to authorities and admitted that a third man, his friend Chris Smith, had jumped out of the vehicle with the gun.  *Id.*

---

[1] Because Petitioner pled nolo contendere and stipulated to a factual basis during the plea colloquy, the following facts are taken from the arrest report.

Deputies found a black bag along the dead-end road, which contained a firearm and a large amount of cash. *Id.* Also, Smith was found walking away from the McDonald's on nearby railroad tracks, wearing clothes that matched those worn by the gun-wielding robber. *Id.* He had a large sum of currency in his wallet, admitted he did not know where he was going, and admitted he knew Petitioner and the other occupant of the vehicle. ECF Doc. 20-4 at 48. After making those admissions Smith invoked his Fifth Amendment rights. *Id.* Stewart, however, agreed to continue speaking with investigators. *Id.* Stewart told officers the three men had travelled from Louisiana and described the robbery and Petitioner's role as the driver of the vehicle. *Id.*

Petitioner was charged as a principal in four counts, three of which -- armed kidnapping, robbery with a deadly weapon, and burglary of a structure with assault or battery – carried a potential life sentence. ECF Doc. 20-3 at 3. The fourth, aggravated assault, carried a potential five-year term. *Id.* He eventually entered a plea agreement in which the State dropped the armed kidnapping and burglary of a structure counts and allowed Petitioner to plead to robbery with a weapon rather than robbery with a deadly weapon. ECF Doc. 20-3 at 3 (written plea offer) and 11 (plea colloquy). The Petitioner also pled to the aggravated assault charge. On December 1, 2015, Petitioner was sentenced to 12 years' incarceration on the robbery with a weapon count and 5 years' incarceration on the aggravated assault count, with the

two running concurrently.  ECF Doc. 20-3 at 17 (judgment) and *id.* at 26 (sentencing transcript).

**B.      Postconviction Procedural History and Timeliness under the Antiterrorism Effective Death Penalty Act ("AEDPA")**

The Respondent admits the petition is timely filed, ECF Doc. 20 at 9, and the undersigned agrees.  Under the AEDPA, a § 2254 petition must be filed within one year of certain "trigger dates."  28 U.S.C. 2244(d)(1).  Here, the applicable trigger date is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  *Id*. at § 2244(d)(1)(A).  Additionally, the limitations period is tolled for the time during which a "properly filed" application for postconviction relief or other collateral review is pending in state court.  28 U.S.C. § 2244(d)(2).

Petitioner filed a timely direct appeal of his judgment and sentence to the First District Court of Appeal ("First DCA"), which resulted in a *per curiam* affirmance without a written opinion on September 14, 2016.  ECF Doc. 20-4 at 4; *Smalls v. State*, 200 So. 3d 65 (Fla. 1st DCA Sept. 14, 2016).  Petitioner did not seek review in the Florida or United States Supreme Court, ECF Doc. 1 at 3, thus the conviction became final ninety (90) days later, on Tuesday, December 13, 2016.

In the interim, however, Petitioner filed a motion to modify sentence (on December 6, 2016) which tolled the AEDPA clock until December 21, 2016, when the motion was denied.  ECF Doc. 20-2 at 5.  The AEDPA clock began to run the

next day and ran for 144 days until May 15, 2017, when Petitioner filed a 3.850 motion[2]. ECF Doc. 20-2 at 8. That motion was continuously pending through two amendments and an appeal until the First DCA affirmed (*per curiam* and without written opinion) the lower court's denial of the second amended 3.850 motion and issued its mandate on January 8, 2019. ECF Doc. 20-5 at 25. Petitioner delivered the instant federal petition to prison mail officials 57 days later, on March 7, 2019. Because only 201 days had elapsed on the AEDPA one-year limitations period when Petitioner filed the instant petition, the petition is timely.[3]

## II.    LEGAL STANDARDS

### A.    The AEDPA Standard of Review

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under that act, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] *See* Habeas Rule 3(d) and *Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.).

[3] Respondent calculates the days that elapsed as 205. Regardless, either calculation is within the 365 day time limit.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *White*, 134 S. Ct. at 1702; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should

apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

## B.    Ineffective Assistant of Trial Counsel ("IATC") Claims

Petitioner raises three (3) claims of ineffective assistance of counsel.[4]  To succeed on an IATC claim, a petitioner must show (1) counsel's performance fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466

---

[4] In Petitioner's amended petition, he identifies two IATC claims as Ground One, and one as Ground Two.  In his supporting memorandum, Petitioner identifies these claims as Part One, Two and Three of Ground One.  Consistent with the Respondent's response, the Court will address these grounds for relief as Grounds One, Two, and Three.

U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.    DISCUSSION

Petitioner exhausted each ground for relief by raising them in his second amended 3.850 motion. As stated above, the First DCA affirmed the trial court's denial of that motion without written opinion, ECF Doc. 19-21 at 3. Thus, this Court will "look through" the First DCA decision to the circuit court's written denial of the 3.850 motion -- the last related state-court decision that does provide a relevant rationale. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Also, because the judge who denied Petitioner's second amended 3.850 motion is the same judge who

sentenced Petitioner, the "presumption of correctness afforded the findings of fact of the state court is particularly strong." *Green v. McNeil*, 2010 WL 3833976, at *10 (S.D. Fla. July 16, 2010), *report and recommendation adopted*, 2010 WL 3833967 (S.D. Fla. Sept. 30, 2010) (citing *May v. Collins*, 955 F.2d 299, 314 (5th Cir. 1992), cert. denied, 504 U.S. 901 (1992)).

After considering the record and applicable law, and applying the standards set forth above, the Court agrees with Respondent that Petitioner is not entitled to habeas relief because he has not shown the circuit court's denial of his claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d).

## A.   Ground One: IATC for Misadvising Petitioner About His Likely Sentence During Consideration of Plea Offer

In Ground One, Petitioner argues he would not have entered into a plea agreement had counsel told Petitioner he could be looking at a sentence of more than the 4 years shown on the sentencing scoresheet. Specifically, Petitioner argues counsel was ineffective in telling him that counsel "had worked out a plea with the State and that the plea would equal the 4 yrs [that] my scoresheet showed was a Guidelines sentence (the scoresheet showed 48.15 months)." ECF Doc. 8 at 22. Petitioner also alleges counsel told him "to get this plea you'll need to plead open to the court." *Id.*

The state court, applying *Strickland*, denied relief on this ground because the record showed Petitioner was advised during the plea colloquy that he faced a potential penalty of up to 15 years – the cap agreed to be the State.  ECF Doc. 20-2 at 61.  The court's conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

A defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Missouri v. Frye*, 566 U.S. 133, 138 (2012), and *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168. Thus, the two-part test articulated in *Strickland* applies to claims that counsel was ineffective during plea negotiations.  *See id.* at 163 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see also Premo v. Moore*, 562 U.S. 115, 118 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain).

The focus of *Strickland*'s performance prong in a plea situation is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56-57 (quoting *McMann v. Richardson*, 397 U.S.

759, 771 (1970)).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).  "To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client."  *Id.* (citing *Walker v. Caldwell*, 476 F.2d 213, 217 (5th Cir. 1973), in turn citing *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948)).

To meet *Strickland*'s prejudice prong in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  *Id.*, *Hill,* 474 U.S. at 58-59.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Strickland*, 466 U.S. at 693.  "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.

As the circuit court found, the record clearly refutes Petitioner's claim.  First, the written plea offer states that Petitioner was pleading "straight up," and the "State agrees to a 15-year cap to any prison sentence."  ECF Doc. 20-3 at 4.  Second, Petitioner's guidelines sentencing scoresheet stated that "48.15 months" was the "lowest permissible prison sentence in months" and that "35 years" was the "maximum sentence in years."  ECF Doc. 20-4 at 44.  Petitioner was also advised of this range during his sentencing hearing.  ECF Doc. 20-3 at 28.

Third, during the plea colloquy, the state court judge asked Petitioner, "And you understand that you could be sentenced I guess on Count Two up to a maximum of 15 years?" and, after the prosecutor stated that it would be "a guidelines sentence with a cap of 15 years", the court continued, "And do you understand that your attorney could argue anywhere from a low-end of the guidelines up on that, right?" ECF Doc. 20-3 at 13.  Petitioner answered, "Yes, sir."  *Id.*  The court also asked Petitioner immediately afterwards if he had any questions about the terms of the plea, to which Petitioner responded "No, sir."  *Id.* at 13-14.

"[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *Williams v. Sec'y, Dep't of Corr.*, No. 1:18-CV-195-AW-GRJ, 2020 WL 1522392, at *4 (N.D. Fla. Feb. 5, 2020), *report and*

*recommendation adopted*, 2020 WL 1520142 (N.D. Fla. Mar. 29, 2020) ("When, at a plea colloquy, the presiding judge correctly advises a defendant about the consequences of pleading guilty, the judge's advice cures any contrary advice by counsel.") (citing *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (holding that an erroneous prediction by counsel is not ineffective assistance where an adequate plea hearing was conducted and written plea agreement accurately stated the potential sentence); *United States v. Wilson*, 245 F. App'x 10, 12 (11th Cir. 2007)).

As the exchange among the prosecutor, the court, and the Petitioner shows, Petitioner was clearly advised he was looking at a sentence of up to 15 years for count two.  Simply, the record is devoid of any evidence Petitioner was advised by counsel that his sentence would be 4 years if he pled and, even if counsel had made such a representation, any error would have been cured by the judge's instructions. Thus, Petitioner has not shown counsel's performance was defective or that that he was prejudiced by such performance.  The state court's determination was neither contrary to law nor an unreasonable application of the facts.  Petitioner is not entitled to habeas relief on this claim.

### B.    Ground Two: IATC for Failing to Object to the Investigator's Testimony During Sentencing *and* to the Implication Made by the Court that Petitioner Had Engaged in Another Robbery

In Ground Two, Petitioner argues counsel was ineffective for failing to object to what he contends were two (2) falsehoods.  First, Petitioner takes issue with

counsel's failure to object to Investigator Cosson's[5] testimony that Petitioner "gave false information to the deputies who stopped the vehicle" regarding his identity. ECF Doc. 8 at 25. Petitioner argues the prosecution violated *Giglio* by eliciting this testimony from Cosson, knowing that Petitioner had invoked the Fifth Amendment and not given any statements to deputies during the felony stop. Second, Petitioner takes issue with counsel's failure to object to the court's consideration of Petitioner's alleged involvement in another robbery in Louisiana. Petitioner argues the Court used "the combination of The Falsehood that petitioner tried to hide his identity and the Falsehood that petitioner was a participant in a separate robbery as its basis to forego the 4 year agreed upon plea in favor of the 12 year sentence." ECF Doc. 8 at 26 (capitalization in the original).

Petitioner raised both of these claims as IATC claims in his second amended 3.850 motion. However, as explained more fully below, it appears that, while the state court addressed the "giving of false identification" claim as an ineffectiveness claim, it did not construe the "prior Louisiana robbery" claim as an ineffectiveness claim. Therefore, for the reasons given below, the Court will review the denial of the giving of false identification claim under the AEDPA deferential standard of review but will review the denial of the Louisiana robbery part of the claim *de novo*. Regardless of the review afforded, however, neither claim has merit.

---

[5] Petitioner incorrectly refers to Investigator Cosson as "Losson."

1.    Failure to object to testimony about the false identification

When deputies pulled Petitioner over for the felony stop, Petitioner invoked the Fifth Amendment.  As a result, the deputies did not ask Petitioner any questions.  Instead, the deputies used a driver's license that was found on Petitioner's person to identify him.   That driver's license was for Petitioner's cousin, Wesley Darryl Marrwarne.  Petitioner argues in this ground for relief that Cosson falsely testified during the sentencing hearing that Cosson was not able to identify the defendant because he gave false information to the deputies.   Thus, Petitioner argues his counsel should have objected to Cosson's testimony based on *Giglio*.

In denying relief on this claim, the state court applied the *Strickland* standard and found the claim "internally inconsistent or not facially sufficient".  ECF Doc. 20-2 at 62.  Namely, the court noted Petitioner acknowledged he was not asked any questions because he had invoked his Fifth Amendment rights, that he had his cousin's driver's license, and that officers found the driver's license while searching his person.  *Id.*  Also, the arrest report shows deputies used the driver's license to identify Petitioner.  *Id.* at 63.  Thus, Cosson's testimony was not false.

The state court's conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).  To justify a new trial based on a *Giglio* violation, the defendant must show "(1) the prosecution knowingly used perjured testimony, or failed to correct false testimony upon learning of its falsity; and (2) the

use of such testimony was material, meaning that it is reasonably likely that the false testimony could have affected the judgment." *United States v. Gallardo*, 977 F.3d 1126, 1142 (11th Cir. 2020).

Petitioner cannot meet the first prong because Investigator's Cosson's statement that Petitioner "gave false information to the deputies that stopped the vehicle", ECF Doc. 20-3 at 43 (Sent. Trans. p. 18), was true. As stated above, the arrest report states, "The driver was initially identified himself [sic] as Wesley Darryl Martwaine by Louisiana driver's license, however he was later correctly identified as Trevor Bernard Smalls." ECF Doc. 20-4 at 47. Petitioner knew deputies were using the driver's license found on his person to identify him and, nonetheless, failed to correct the misidentification by declining to answer questions.

Petitioner also cannot meet the second prong because the same judge who presided over the sentencing presided over the 3.850 motion and was unpersuaded by Petitioner's argument. The judge rejected Petitioner's central premise – that "the false testimony provided" was the "basis to the court's forgoing of the favorable 4 years in favor of the 12-year sentence." ECF Doc. 8 at 26 (spelling errors cleaned up).

Thus, Any *Giglio*-based objection made by counsel at sentencing would have failed and an attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted). Moreover, because there was no

agreed upon 4-year plea deal, Petitioner also cannot show he has been prejudiced by counsel's failure to object to Cosson's testimony. Accordingly, Petitioner is not entitled to habeas relief on this claim.

2.      Petitioner's IATC claim based on the mention of and reliance on the prior Louisiana robbery does not entitle him to federal habeas relief

As stated above, the second part of Ground One is Petitioner's argument trial counsel was ineffective for failing to object to the state court's consideration at sentencing of Petitioner's alleged participation in a prior Louisiana robbery. Although this claim was raised by Petitioner in the second amended 3.850 petition, it appears the state court inadvertently failed to address this part of Petitioner's IATC claim when it denied the 3.850 motion.

Instead, the state court addressed this argument in terms of whether the sentencing court relied on an improper factor for sentencing and concluded the argument should have been raised on direct appeal and was not a proper basis for a 3.850 motion. Because the state court did not consider whether counsel's failure to object to testimony about the Louisiana robbery was ineffective, this Court will consider Petitioner's argument *de novo*. *See Bester v. Warden*, 836 F.3d 1331, 1336 (11th Cir. 2016) ("[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge").

The judge who sentenced Petitioner also sentenced the other co-defendants. During Petitioner's sentencing hearing, the judge recalled testimony being presented in those prior sentencing hearings about the three men being involved in another McDonald's robbery in Louisiana.  Thus, after the State argued Petitioner should get a sentence of 12 years – the same sentence received by co-defendant Stewart, the court asked Petitioner's counsel and the prosecutor whether Petitioner was also involved in the Louisiana robbery.  ECF Doc. 20-3 at 44.  Specifically, the Court asked Petitioner's counsel, who was trying to distinguish Petitioner from Stewart in seeking a sentence of less than 12 years, to speak to Petitioner's role in the Louisiana robbery.  *Id.* at 46.  Petitioner's counsel explained to the court that Stewart had confessed to his role in the Louisiana robbery and in doing so named Petitioner as also being in the car.  *Id.* at 46-47.

Petitioner argues the discussion of the Louisiana robbery made a difference in the outcome because "the court used [the statements] as a basis for its deviating from the agreed upon 4 year plea deal."  ECF Doc. 8 at 27.  As discussed above, however, there was no four-year deal from which to deviate.  Regardless, it would have been futile for trial counsel to object to the court's consideration of the Louisiana robbery either on *Giglio* or due process grounds.

The colloquy among Petitioner's counsel, the State, and the court regarding the Louisiana did not include any false statements.  As counsel told the court, the allegations regarding Petitioner's involvement in the Louisiana robbery were based

on Stewart's confession. Thus, it was proper for the state court to consider the Louisiana robbery in sentencing Petitioner. *See Paul v. State*, 277 So. 3d 232, 239-40 (Fla. 1st DCA 2019) (recognizing that sentencing court could consider misconduct where allegation was not unsubstantiated but based on evidence); *Barlow v. State*, 238 So. 3d 416, 417 (Fla. 1st DCA 2018) (recognizing that even if sentencing court had considered conduct that was uncharged, this would not have been error because, inter alia, "[the conduct] ... was not unsubstantiated"). Accordingly, Petitioner cannot show either deficient performance or prejudice under *Strickland*, and so Petitioner is not entitled to relief.

## C. Ground Three: IATC for Failing to Advise Petitioner He Could Withdraw His Guilty Plea

In Ground Three, Petitioner argues counsel was ineffective for telling him, after the Court sentenced him to 12 years' incarceration, that the "only thing [he] can do is appeal the judge's decision." ECF Doc. 8 at 28. Petitioner argues counsel's statement was erroneous because Petitioner also had the right to move to withdraw the plea under Florida Rule of Criminal Procedure 3.170. *Id.* Petitioner insists that "[if] Counsel would have properly advised petitioner of this available procedure Petitioner would have immediately filed a "Motion To Withdraw The Plea," and "the court would have been bound to either allow the withdrawal of the plea or to hold an evidentiary hearing on the motion." *Id.* Petitioner argues he "would have explained the reasoning behind his plea, i.e., His Belief that he would be receiving

the four years that his counsel told him he would receive, along with the record fact that the only sentence discussed (at sentencing) between the court, the state and petitioners counsel Was The Guideline Sentence Of Four Years." *Id.* at 28-29.

The state court rejected this claim as "not facially sufficient" because a plea may be withdrawn after sentencing under rule 3.170 *only* upon the grounds specified in rule 9.140(b)(2)(A)(ii)(a)-(e), Florida Rules of Appellate Procedure and Petitioner did not identify any ground supporting a withdrawal. ECF Doc. 20-2 at 64. The state court also found that counsel's decision regarding whether to appeal or withdraw the plea was a strategic one. *Id.*

The state court's conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d). First, the state court correctly determined counsel's decision whether to appeal or attempt to withdraw the plea is a strategic one based on the risk of having the plea not be accepted. *See Phillips v. State*, 225 So.3d 269, 271-72 (Fla. 4th DCA 2017). Here, Petitioner faced a potential of up to 35 years' incarceration and received a sentence of only 12 years. Thus, it was reasonable for counsel to believe that an appeal was the more beneficial approach. This Court is to give "substantial deference" to counsel's strategic decisions. *Arvelo v. Sec'y, Fla. Dep't. of Corr.*, 788 F.3d 1345, 1349 (11th Cir. 2015). Indeed, "[i] t is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial

counsel who were informed of the available evidence." *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1302 (11th Cir. 2019).

Second, Petitioner has not shown that a motion to withdraw would have been successful. As the state court correctly noted, under that Rule 3.170, **"**A defendant who pleads guilty or nolo contendere without expressly reserving the right to appeal a legally dispositive issue may file a motion to withdraw the plea within thirty days after rendition of the sentence, but only upon the grounds specified in Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(a)-(e) except as provided by law." Fla. R. Crim. P. 3.170. Those grounds are: (1) the lower tribunal's lack of subject matter jurisdiction; (2) a violation of the plea agreement; (3) an involuntary plea; (4) a sentencing error; or (5) as otherwise provided by law. Fla. R. App. P. 9.140(2)(A)(ii).

There is no evidence in the record to support any of those grounds. It is clear the state court had subject matter jurisdiction over the case; the plea entered by Petitioner was a straight up plea – thus there was no plea agreement; as stated above, Petitioner was told by the court he faced a penalty of 4-35 years' incarceration and thus cannot argue his plea was involuntarily based on his belief he was looking at only 4 years; and there was no sentencing error. Therefore, even if counsel had raised a motion to withdraw plea under Fla. R. Crim. P. 3.170(*l*), it would have been meritless. *See Knowles v. Mirzayance*, 556 U.S. 111, 126-27 (2009) (the law does not require counsel to raise every available non-frivolous defense); *Chandler v.*

*Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection). Petitioner is not entitled to habeas relief on this ground.

## IV.    CONCLUSION

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must consider the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Id*. at 474.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.     That the amended petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Smalls*, 2014-CF-689, in the First Judicial Circuit, in and for Walton County, Florida, ECF Doc. 8, be DENIED without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

3.     That the clerk be directed to close the file.

At Pensacola, Florida, this 10th day of September, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.